STAR BOTTLING COMPANY v. LOUISIANA PURCHASE EXPOSITION COMPANY, Appellant.

Division One, February 29, 1912.

1. NEW TRIAL: Reference Case. There is nothing peculiar to a reference case that prohibits the award of a new trial where a proper motion looking to that end is interposed.

2. ————: ————: What Matters May Be Retried. Where there has been a reference by consent of parties, and the referee has made his report, accompanied by the evidence, and exceptions thereto have been ruled upon, the new trial would not necessarily cut behind the order of reference and the report, and call for a new referee or for new evidence covering the whole case and a new report, but would be confined to the hearing on the exceptions on both sides, etc. However, for good cause shown the court might in a proper case, on a retrial, order the referee to hear further evidence or even order a new reference, if a just determination of the issues required it and the exceptions were broad enough to cover the point. But as a general rule, a new trial in a reference case only opens, in the first instance, the issues on the exceptions to the report, the rulings thereon and the judgment.

3. ————: Asked by Both Parties: Granted to Plaintiff. Where both plaintiff and defendant filed motions asking for a new trial, and defendant's was overruled and plaintiff's sustained, neither party can appeal. If a litigant wishes to preserve the right to complain of a new trial granted to his adversary, he must not ask one himself; for if either get it, both get it, and to that the one who did not get it consented by asking for it himself. Before a litigant can appeal he must be aggrieved (Sec. 2038, R. S. 1909), and no one can be aggrieved by that to which he consented.

[The case of Cramer v. Barmon, 193 Mo. 327, insofar as it conflicts with these views, and insofar as it holds that there can be two appeals from the same judgment, is disapproved. Held, by VALLIANT, C. J., in a separate concurring opinion, that the decision in Cramer v. Barmon does not conflict with the decision in this case, and that that case was correctly decided.]

4. ————: ————: ————: Reasons for Granting It. Nor, in such case, will appellant be allowed an appeal because the

reasons for granting respondent the new trial were unsound. When a new trial is granted the reasons for granting it fill no appreciable office thereafter.

5. ————: ————: ————: Interlocutory Order Refusing to Dismiss. The fact that the court, by interlocutory order, overruled respondent's motion to dismiss appellant's appeal on the ground that it was not entitled to one, is no reason why that error should not be later corrected, when the court, upon full consideration, are of the opinion that the motion should then have been sustained.

Appeal from St. Louis City Circuit Court.—*Hon. M. G. Reynolds,* Judge.

AFFIRMED.

*F. A. & L. A. Wind, J. Wm. Taylor* and *Sim T. Price* for respondent.

No error can be assigned for granting a new trial where appellant had asked for a new trial. Dierman v. Bag Co., 144 Mo. App. 474.

*Joseph H. Zumbalen* and *Henry T. Ferriss* for appellant.

(1) Respondent's first contention is that appellant cannot complain of the order granting respondent a new trial, because appellant also asked for a new trial, which motion was overruled. This court has heretofore decided that point adversely to respondent's contention. The respondent filed its motion to dismiss this appeal at the April term, 1909, of this court, basing said motion upon the same ground now again urged in its brief, and said motion was, after consideration by this court, overruled. The respondent is concluded by said ruling and should not be permitted to raise said question again on this appeal. It is the settled rule of practice that an appellate court, having overruled a motion to dismiss an appeal, will not consider a subsequent motion to dis-

miss based upon the same grounds.  Levy v. Levy, 107 La. 576; Ferguson v. Bruckman, 164 N. Y. 481; Murphy v. Stelling, 1 Cal. App. 95; Ellis v. Moon, 40 Wash. 114.  Although the respondent has not filed a second motion to dismiss, yet the effect. of his again raising the question in his brief is precisely the same as though he had filed such a motion, and is within the reason of the rule.  If, however, the court should nevertheless deem it proper to re-examine the question, we submit that the former ruling thereon was correct and should be adhered to.  The statute gives to "any party to a. suit aggrieved" the right to appeal "from any order granting a new trial."  R. S. 1909, sec. 2038; McFarland v. Pierce, 151 Ind. 546; Lamar v. Lamar, 118 Ga. 684; Kinealy v. Macklin, 67 Mo. 99.  The motions being based on diametrically opposed theories of the law governing the case, it would be absurd to say that the same result was secured whichever motion was sustained, or that the court's action in sustaining plaintiff's motion is just what defendant asked for, and that therefore defendant cannot be aggrieved. What defendant asked for was something entirely different, and the court refused to grant it.  Cramer v. Barmon, 193 Mo. 327.

LAMM, J.—Appellant's charter expired pending this appeal by limitation.  By stipulation the (unnamed) trustees of the Louisiana Purchase Exposition Company enter their appearance as party defendant, and are substituted by consent of respondent.

The bottling and exposition companies entered into an extensive contract giving the bottling company a "soft drink concession" at the World's Fair in St. Louis in 1904.  That concession gave the bottling company the right to manufacture and sell on the exposition grounds carbonated water, flavored and unflavored, lemonade, orangeade, cider, root beer, pearine, ice creams, ices, soda water and all hot and cold drinks

usually served at soda fountains, and all other so-called "soft drinks." Certain reservations were made in favor of restaurants, lunch stands and exhibitors of spring, mineral or other water, root beer, malto grapo, orangeade, cider, grape juice, chocolate, cocoa, coffee and tea, and the right to provide free drinking water was reserved to the exposition company.

During the whole life of the exposition there was friction in the relations of the contracting parties. Complaints were made by the bottling company, and rasping controversies arose on the meaning of this, that or the other term of the contract—for example: On the contract authority of a certain officer of the exposition company to settle controversies, on whether the bottling company held divers and sundry exclusive rights, on whether it got at the hands of the exposition company the number of stands contemplated by the contract as well as sewerage, water and light, on whether the exposition people dealt fairly with the bottling people in changing stands, on whether water was a "soft drink" and could be sold by the bottling company after the exposition company permitted the sale of drinking water on the ground, on the meaning of "hot drinks," on whether ice cream cornucopias (yclept "gopherettes") pertained to an ice cream concession or were a food because of the edible wafer wrapping the ice cream and pertained to a restaurant or lunch stand concession, on whether the bottling company could make and sell coffee as restaurants make and sell it or must be confined to a kind of coffee usually prepared and drawn at soda fountains, and so on and so on.

When the exposition closed plaintiff sued, alleging performance on its part and non-performance on the other side. Issue was joined on its fifth amended petition. Thereby it formulated a long list of grievances, alleged breaches of the concession contract in many ways, claiming damages in the sum of $257,351.24.

In its answer the exposition company set forth its theory of the contract, pleaded compliance therewith and non-compliance by the bottling people, and then set up a counterclaim with many specifications, claiming damages for breaches of the contract on the part of its adversary in the sum of $14,143.59.

A reply came in consisting of allegations of confession and avoidance, waiver, estoppel and denial.

By consent of all parties the cause was referred to John M. Holmes, Esq., of the St. Louis bar, "to try all issues and report his decision with all convenient speed." The learned referee heard a volume of testimony and made and filed his report. To that report in due time both the bottling and the exposition company filed formidable written exceptions. Presently the court overruled all exceptions, approved the report of the referee and judgment followed. Thereat both companies filed their several motions for a new trial. Presently that of the exposition company was overruled, that of the bottling company sustained (the court giving reasons in a memorandum filed) and a new trial was granted. From that order the exposition company on apt steps and in due time appealed.

The first question is: Will an appeal lie from an order, *nisi,* granting a new trial *when both parties litigant asked a new trial and one is granted to either?* Or to put the question more pointedly: Will an appellate court review and pronounce upon the reasons assigned below for granting a new trial, *when both parties litigant asked for one and one is granted to either?*

Any court of general jurisdiction in Missouri may award a new trial on any issue on cause shown. [R. S. 1909, sec. 1994.] So, at a pinch, *ex debito justiciae,* and of inherent right, it may award one on its own motion during the term. •[Ewart v. Penniston, 233 Mo. 695.] The statute quoted means, of course, that a new trial may be awarded generally (as here) on all

the issues, for a power to award on *any* issue is broad
enough to cover *all*.

There is nothing peculiar to a reference case pro-
hibiting the award of a new trial where a proper mo-
tion looking to that end is interposed. Such is with-
in the reasoning of State ex rel. v. Hurlstone, 92 Mo.
327, and cases cited, and Maloney v. Railroad, 122 Mo.
106.

What is a new trial where one is granted gener-
ally by a trial court? To attempt to define a term
that defines itself is to invite danger of making ob-
scure what is already clear—to conceal the fruit with
leaves. The term "new trial" means what it says—
i. e., a trial anew, *de novo*,—"with as little prejudice
to either party as if it had never been heard before.
No advantage is taken of the former verdict on the
one side, or the rule of court for awarding such sec-
ond trial on the other." [3 Black. Com., *391.]

In a case where there has been a reference by
consent of parties, as here, and the selected referee
qualified, took evidence, made his report, accompan-
ied by the evidence, and exceptions have been filed
thereto and ruled upon, as here, then (whatever con-
clusion might arise by mere cold definition and a chop-
ping of logic) the common sense of it is that a new
trial would not necessarily cut behind the order of
reference and the report, and call (whether or no) for
a new referee or for new evidence covering the whole
case and a new report; but a new trial would be con-
fined to the hearing on the exceptions on both sides,
the action of the court thereon which led directly up
to and produced the judgment and the mischief to be
abated. Those exceptions, those rulings and that judg-
ment each and all would be opened up for re-examina-
tion and redetermination in the light of the evidence
on file. We do not mean to rule that for good cause
shown a court might not in a proper case on a retrial
order the referee to hear further evidence, or even

order a new reference, if a just determination of the issues required it and the exceptions were broad enough to cover the point. What we want to say is that, as a general rule (and this has a bearing on a contention made here that we should go into the reasons for granting a new trial) a new trial in a reference case only opens, as said, in the first instance, the issues generally on the exceptions to the report, on the rulings and the judgment—the exceptions and the report standing somewhat in the nature of pleadings on the final hearing, and the judgment following as a legal conclusion from the hearing and rulings on those exceptions.

We have been moved to say what we have about a new trial in a reference case because *logically,* on strict and last analysis, a new trial might mean beginning all over again in hearing testimony. It would mean that in a jury trial. But the trial undone here by the court's order is not a jury trial. It is a trial by the judge after the trial by the referee is over.

Speaking of logic in connection with legal exposition, it will do to say that no argument against the use of a thing can be drawn from the abuse of the thing (*Ex abusu non arguitur ad usum*) and yet the use of logic may be abused and care is due on that score. For instance: Logic was logic in the poetical story of the "Deacon's Masterpiece, or, the Wonderful One-Hoss Shay" (q. v.). But the result was not satisfactory as the whole bar of Missouri know. Logic has its uses in administering law—high uses and many of them. But, after the last word is said, "the life of the law has not been logic. It has been experience." [Holmes, Com. Law, p. 1.] Law, having to do with the practical, everyday affairs of mankind, should subserve the ends and purposes of good sense and broad justice, not those of mere logic, though when the two go hand in hand they are a helpful and pleasant pair of judicial handmaidens, and peradventure, when they

sit smiling as they often do on either side of a good judge at labor he feels restful. Why in a new trial in a reference case, having regard to experience, order a new reference or further evidence at great delay and expense when the data for a just result is at hand?

An appeal was unknown at common law. It rests alone on statute. Before a litigant can appeal. he must be "aggrieved." [R. S. 1909, sec. 2038.] If he is not aggrieved he cannot appeal. What grievance can a litigant have who gets what he asked for? How can he be injured in the way he gets it, so long as he gets it? If the bottling company was alone loosed by the new trial, and the exposition company was left bound by the old trial, then indeed would it have a grievance. But it is not so, a new trial for one is a new trial for both in all that term implies. It is a loaf baked in the oven of the law to be sociably shared by both parties. Verily, withal, the benefits of a new trial, like the rain and the dew, descend alike upon the just and the unjust, on defendant as well as plaintiff—the terms "just" and "unjust" being used only for the purpose of the simile.

As appellant is not aggrieved, it was not entitled to an appeal in a case where its antagonist was granted a new trial and its own motion is overruled. [Deiermann v. Bag Company, 144 Mo. App. 474.] In that case GRAY, J., speaking for the Springfield Court of Appeals, holds language in point, viz.: "If the court had sustained appellant's motion for new trial and overruled respondent's motion therefor, the case would have been in the identical condition that it was when the court overruled appellant's motion and sustained the respondent's. And this being true, the appellant was not aggrieved by the action of the court in granting a new trial, and the appeal is without merit."

It is suggested that the Springfield Court of Appeals was without jurisdiction in the Deiermann case,

it having gone there from St. Louis and the statute warranting that transfer having been declared unconstitutional (State ex rel. v. Nixon, 232 Mo. 496) and, therefore, that ruling is in the nature of obiter. That is so. But it arises to the dignity of sound exposition, and, with the benediction of our present *vise,* the brand "obiter," may be taken as effaced.

There is a maxim running that every consent removes error (*Omnis consensus tollit errorem*). Sometimes it is expressed in other ways—for example, consent always removes the effect of error, or consent heals error, or participating in error cures the error. Courts are fond of applying that maxim in many ways, for it is a fair and convenient rule. (For instance, Crum v. Crum, 231 Mo. l. c. 639, illustrates its application in one phase, and other illustrations abound in any volume of our reports.) We think the rule applies in this case, for do we not announce a proposition hitherto accepted and acted on by the bar, *nisi,* when we say that when both sides asked a new trial and one is granted to either, both are bound by the order and an appeal will not lie? We take it that ever since the statute allowed an appeal from an order granting a new trial (Laws 1891, p. 70) it has been the understanding of the bench and bar on the circuit that if a litigant wishes to preserve the right to complain of a new trial he must not ask one himself; for if either get it both get it and to that appellant consented. At least in the fifth of a century since the statute has been in evidence no appeal has come here of that sort.

It is argued, however, that we should go into the reasons given by the court for granting a new trial, and if we find them insufficient we should set the order aside—this, on the theory that by asking a new trial appellant consented to one, *but not to the one it got.* Otherwise, the argument runs, the court will be in the leading strings of its erroneous reasons when

the new trial comes on, and in that way appellant is aggrieved. There would be much force in this argument if there was any rule, practice or good reason requiring a trial court to continue in the same mind it was when the new trial was granted, and was bound to rule in accord with its reasons for granting one; or if the successor of a trial court was in anywise precluded or handicapped by the reasons assigned by his predecessor in granting a new trial. But we know of no rule of that sort. To the contrary when a new trial is granted the reason for granting one, the *ratio decidendi*, fills no appreciable office thereafter. It has served its purpose and is *drowned* in the order. At the new trial the court presumptively will proceed to try and determine issues presented for its judgment in accordance with the law and the very right of the case. We have no call to presume or anticipate that error will be committed at the new trial. We deal here with error actually committed, not with imaginary or non-existing error, sounding in prophecy and hid away in the womb of the future. Both parties are at liberty to make their contentions below at the new trial, with the presumption they will be heard fairly and determined well. If they are not determined in that way it will be time enough for us to interfere *after the fact,* and in the course of orderly procedure. If we were reversing and remanding a case for errors a different rule would apply. We ought to point them out, in such a case, so they could be avoided.

But it is argued this court overruled a motion to dismiss the appeal on the very point discussed in this opinion. We did overrule such a motion. But the question was novel in this court, we did not have the record before us at that time, nor did we stand informed by briefs and arguments of counsel. That interlocutory ruling was wrong. When a ruling is sharply wrong it accords with correct practice to cor-

rect it at the first opportunity in the same case. [Gardner v. Robertson, 208 Mo. l. c. 610.]

Finally we are referred to the case of Cramer v. Barmon, 193 Mo. 327. The case is reported with a wrong title in the Kansas City Court of Appeals for we find it reported in 126 Mo. App. 54, as Cramer v. "Harmon." We make two observations on that case, to-wit: First, it is not in point. Second, if in point, we would not follow it. Apropos to the last observation we make some further observations, viz.: On a fiction (wholly contrary to the fact, based on a notion of the common law) that a judgment is not entered until a motion for a new trial is disposed of, it was reasoned out that since there can be but one final judgment in a case where there are separate counts, or issues, or separate trials (R. S. 1909, secs. 1971, 2097) plaintiff could not, at one stroke, appeal from a judgment against him on the first count and from an order granting defendant a new trial on a second count. In that case plaintiff asked for $5000 on his first count, and the jury, coerced by the court, found against him. On the second count he got a verdict for $1500. The court granted defendant a new trial on the second count, refused plaintiff one on the first, and plaintiff undertook to appeal here from the result of the trial on the first and from the order granting a new trial on the second count. At that time we had jurisdiction where the amount in dispute was over $4500. On that condition of things, we ruled we had no jurisdiction, that the only question here was on the order granting a new trial on the second count, of which the Kansas City Court of Appeals had jurisdiction. It was further held that if plaintiff desired to test the correctness of the result at the first trial as to the first count he must stand by with folded arms, await a determination of the appeal on the second count, and when that was determined on a first appeal he must then take a second appeal on a new final judgment to be ren-

dered below. That ruling was not administering justice without "delay" as the Constitution requires. Moreover, that case introduced an anomaly in the practice and by over nice reasoning and speculative refinements reached a result never in the mind of the lawmaker. We assert boldly that there is no warrant in the written law for forcing *two* appeals when *one* will serve the purpose. Properly construed, section 2038, Revised Statutes 1909, does not forbid taking up a final judgment on one count together with an order granting a new trial on a second count. Why force two, absent a mandatory statute? Is it the policy of our law to make two bites of one cherry and multiply appeals? It is one of the comedies of case law that the Kansas City Court of Appeals quite missed our dainty reasoning. We sent that court the case. It took it and passed on the entire appeal *on both counts* and made an end of it. [*Vide,* Cramer v. Harmon, 126 Mo. App. 54.] I agreed to the Cramer case and make amends by retracting. Again, for appellate purposes in that case, there was a final judgment in point of fact on the first count. It stood there a menace to plaintiff and he was entitled to be eased of it if erroneous. Could not plaintiff have appealed at once if the verdict had not been disturbed on the second count—this because of error in the trial on the first? It was so held in the Scott case, *infra.* Why does he lose that right because he got an additional right to appeal from the order on the second? In law do I lose what I have because the law gives me something more? In effect, the entire case was disposed of below on both counts. Strictly, by the reasoning adopted in the Cramer case, the first appeal could not itself be heard for it was *premature,* since (so ran the case) *there was no final judgment settling all the issues of the case.* In that sense the Cramer doctrine is a two-edged sword which, cutting both ways, cut out any appeal at all—a palpable absurdity. We have given a

construction of our statutes in that behalf in Stone v. Perkins, 217 Mo. 586; Mann v. Doerr, 222 Mo. 1; Smith v. Kiene, 231 Mo. 239, and in Scott v. Parkview Realty Co., 241 Mo. —, on reasoning running counter to the Cramer case.

The premises all considered, the order granting a new trial is affirmed because appellant cannot question it—not because the reasons granting one are sound or unsound. All concur; *Valliant, J.,* in result in separate opinion.

## SEPARATE CONCURRING OPINION.

VALLIANT, J.—I concur in the result reached in the opinion of my learned brother Lamm in this case, but I do not think that it conflicts with the decision of this court in Cramer v. Barmon, 193 Mo. 327, and I do not concur in the criticism of that case, which in my opinion was decided correctly. The argument on which the criticism of that case is based is that although the law does not contemplate a judgment until the time allowed for the filing of a motion for a new trial has passed, and until such motion is overruled if filed, yet in practice the judgment is usually entered as soon as the verdict is rendered, therefore there is in such case a judgment in fact though not rendered according to law, and it is argued that this court in the Cramer case should have treated the judgment in that case, entered in accordance with that practice, as if it had been a lawful final judgment on that count, notwithstanding it was entered before the motion for a new trial thereon had been overruled, and notwithstanding the positive mandate of the statute that in case of two or more counts no final judgment can be rendered on the verdict on one count until the issues on all the counts are tried and the whole case is ready for final judgment. But conceding, for the sake of the argument, that the long practice of entering a judgment

as soon as a verdict comes in gives such a judgment full force, what becomes of that judgment when the court sustains a motion for a new trial? Let us suppose one count, one verdict, and one judgment immediately following the verdict, then a motion for a new trial and an order sustaining the motion, what becomes of that judgment? The statute says if there are several counts a verdict on one count must wait until the issues in all the others are tried and all are ready for final judgment. In the Cramer case there were two counts, a verdict for the defendant on the first count, a verdict for the plaintiff on the second, the court overruled the plaintiff's motion for a new trial on the first count and sustained defendant's motion for a new trial on the second count; there was therefore no final judgment on the second count, and if a judgment was in fact entered on the first count it was so entered in violation of the statute which positively forbade it. The order sustaining the motion for a new trial on the second count was not a final judgment, and no appeal could have been taken from it except for the express provision of the statute. On appeal from an order sustaining a motion for a new trial, the only question is, did the trial court err in sustaining the motion?

In the Cramer case as soon as the trial was ended the clerk entered judgment for the defendant on the first count and for the plaintiff on the second count; plaintiff filed a motion for a new trial on the first count, which the court overruled; defendant filed a motion for a new trial on the second count, which the court sustained; the sustaining of the defendant's motion left the issues under the second count open for trial; there could therefore be no final judgment on that count while the order granting a new trial stood; the order had the effect to vacate the judgment which the clerk had entered immediately on the return of the verdict in that case, and since the statute says there

shall be no final judgment on either count until the case is ready for final judgment on all the counts it follows that the order sustaining the motion for a new trial on the second count vacated the judgment that had been entered on the first count. There being no final judgment on either count, the only thing the plaintiff could appeal from was the order sustaining the motion for a new trial on the second count. With the second count open for a new trial the plaintiff could not have appealed from the judgment that had been entered against him on the first count, nor could he have injected into his appeal from the order sustaining the defendant's motion for a new trial on the second count errors committed against him in the trial of the first count. That is what he attempted to do in that case, but this court said it could not be done. The only thing he could do was to complain of the error in granting the new trial on the second count, and then bide his time as to the first. But it is said that this might force the party to two appeals in the same case, and that is so, but it is so only because the statute expressly authorizes an appeal from an order sustaining a motion for a new trial.

In my opinion the Cramer case was decided correctly.

But there is nothing in the Cramer case contrary to the law as declared in the main opinion in the case at bar; here we have a petition of only one count, an answer containing a counterclaim, findings on all the issues and a judgment covering the whole case; each party filed a motion for a new trial, the court sustained the motion of one and overruled that of the other; sustaining the motion of one opens the case for trial for the other as well.