RAYLAINE WORSTEDS, Inc.,
a Corporation,
v.
The UNITED STATES.
No. 49550.

United States Court of Claims.
Dec. 5, 1956.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

Martin E. Rendelman, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Gordon F. Harrison, New York City, on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff makes its claim under the War Contract Hardship Claims Act, popularly called the Lucas Act, 60. Stat. 902, 903, as amended by 62 Stat. 992, 41 U.S.C.A. § 106 note, to recover an alleged net loss of $43,238.93 sustained by the plaintiff in the performance of Government contracts between September 16, 1940, and August 14, 1945.

During the above period, the plaintiff, a corporation engaged in. the operation of a mill at Manchester, New Hampshire, performed under 12 contracts with the Army Quartermaster Corps. Six of the contracts, entered into between June 19, 1940, and April 1, 1941, contained a liquidated-damages clause under which the Government could withhold specified sums per day for each day the delivery of prescribed shipments of cloth. under the contracts was late. The other six contracts entered into between February 5, 1942, and April 26, 1943, did not contain liquidated-damages clauses and are not in any way subject to litigation in this suit. Pursuant to the liquidated-damages clause in the above contracts, liquidated damages were assessed by the Government against the plaintiff and withheld from payments made by the Government to the plaintiff.

The aforementioned damages clause also contained a provision that the contractor could obtain an extension in its date of delivery when the cause of a delay in delivery was due to unforeseeable causes beyond the control and without the fault or negligence of the contractor if the contractor notified the contracting officer in writing of the cause of the delay within 10 days from the beginning thereof.

Deliveries on contract number W 669 qm–10270 were first due on May 4, 1941, but were not forthcoming. On May 6, 1941, the contracting officer, by letter, notified the plaintiff of the delinquency. Plaintiff answered by letter on May 12, 1941, indicating the causes of delay but not making a request for an extension of the time of delivery. On July 9, 1941, however, the plaintiff did make such a request but it was later denied by the contracting officer on October 15, 1941, because the plaintiff did not make its request within the 10 days specified in the contract and because the causes assigned by it were not unforeseeable causes beyond the control and without the fault or negligence of the plaintiff. There is some question as to whether the plaintiff appealed from this decision within the 30 days specified therefor in the contract, but the record does reveal a letter by the plaintiff to the contracting officer giving notice of appeal on November 13, 1941. The case was subsequently forwarded to the Quartermaster General in Washington with another more-detailed letter from the plaintiff dated December 11, 1941, which the contracting officer in its letter classified as the letter of appeal.

The letter of November 13, 1941, was not mentioned to the Quartermaster General and was evidently not forwarded to him. The forwarding letter assigned an additional reason for refusing to grant relief to the plaintiff on appeal, it being that plaintiff did not file its appeal within the 30-day period specified in the contract. The letter of December 11, 1941, was evidently treated as an adequate appeal, however, and the Quartermaster General denied recovery to the plaintiff for only the first two causes mentioned above.

Upon the passage of the War Contract Hardship Claims Act, and pursuant thereto, the plaintiff on February 5, 1947, sought remission of losses due to the assessments of the liquidated damages by request to the Quartermaster Purchasing Office, New York, N. Y. This claim was denied by the War Contract Hardship Claims Board on December 22, 1949, upon the ground that no written request under the First War Powers Act had been made by plaintiff of the War Department. The Board, upon reconsideration, again denied plaintiff's claim on February 16, 1950.

Plaintiff filed its petition with this court on March 21, 1950, requesting a remission of the liquidated damages assessed alleging that it is entitled to recovery because it meets the prerequisites of the act, to wit, it suffered an overall net loss on all its Government contracts, performance of which occurred within the period of September 16, 1940, and August 14, 1945, and that such loss was not due to its own fault or negligence. Plaintiff also avers that a proper written request for relief within the purview of section 3 of the Lucas Act was filed on behalf of plaintiff with the War Department of the United States prior to August 14, 1945, contrary to the decision of the War Contract Hardship Claims Board.

This court has jurisdiction to award recovery to claimants under the Lucas Act only in those cases where a proper request for relief was filed prior to August 14, 1945, pursuant to section 3 of that act.

Section 3 of the Lucas Act is as follows:

"Claims for losses shall not be considered unless filed with the department or agency concerned within six months after the date of approval of this Act, and *shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945,* but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act." [Emphasis added.]

The Supreme Court in Fogarty v. United States, 1950, 340 U.S. 8, 71 S. Ct. 5, 8, 95 L.Ed. 10, has construed that section "to mean written notice presented prior to August 14, 1945, to an agency which was authorized to grant relief under § 201 of the First War Powers Act." In that connection the Court therein went on to say 340 U.S. at page 13, 71 S. Ct. at page 8:

" * * * Since there is no definition of the term in the Act or regulations, and since the legislative history of the Act does not show that any settled usage of the term was brought to the attention of Congress, no particular form of notice is required. But whatever the form of notice, it must be sufficient to apprise the agency that it was *being asked to grant extra-legal relief* under the First War Powers Act for losses sustained in the performance of war contracts." [Emphasis added.]

Thus, in order for a claimant in this court to recover for losses incurred in the performance of Government contracts between September 16, 1940, and August 14, 1945, it must show that it made a written request for *extralegal relief* with the department or agency concerned before August 14, 1945.

This we think the plaintiff has not done in this case.

In support of its contention that it did file a proper written request for extralegal relief the plaintiff points to the fact that this court on July 9, 1951, overruled, without opinion, the defendant's motion of May 2, 1951, to dismiss plaintiff's petition on the ground that no proper request for relief had been filed. Raylaine Worsteds, Inc., v. United States, 119 Ct.Cl. 838. The plaintiff contends that notwithstanding the fact that no opinion was filed, the decision of a case is the court's judgment thereon, its opinion being only a statement of the reasons on which the judgment rests. It argues, further, that since this issue was previously decided by the court it should not again be permitted to come into issue and that the court should apply the rule of the "law of the case." Plaintiff cites 21 C.J.S., Courts, § 195, page 330 as the basis for its statement.

The defendant argues that, in the absence of any written opinion to the contrary, the court in overruling its motion did not decide plaintiff's requests were proper but rather indicated a preference to withhold its definitive pronouncement on that issue until after trial when it could appraise the requests in the perspective of their background. In any event, the defendant states, it respectfully asks the court to reconsider its decision on defendant's earlier motion.

■■ . The rule of "law of the case" relied upon by the plaintiff is not as inflexible a rule as the plaintiff would have it be. The general rule is that a decision by the court on a point in a case becomes the law of the case unless or until it is reversed or modified by a higher court. The rule does not stop there, however, and it is not inflexible. The rule does not constitute a limitation on the power of the court, which may disregard or correct a prior decision or ruling which was plainly wrong, or where the application of the law of the case rule would work a manifest injustice. It has been held that questions decided on a motion to dismiss an appeal become the law of the case, but that an improper ruling on such a motion does not preclude a disposition of the case on proper grounds on a hearing on the merits.

See also Whitfield v. Sears, 233 Iowa 887, 10 N.W.2d 564; Star Bottling Co. v. Louisiana Purchase Exposition Co., 240 Mo. 634, 144 S.W. 776.

It is the position of this court that the order it entered on July 9, 1951, overruling the defendant's motion to dismiss, does not constitute the "law of the case" and does not preclude the court from now rendering a decision on whether or not a proper request for extralegal relief was filed by plaintiff before August 14, 1945, after a hearing on the merits.

■ Plaintiff in its brief, to support its contention that a proper request for extralegal relief was made, urges that letters from H. E. Straw, President of The Amoskeag National Bank of Manchester, N. H., dated November 29, 1941; from F. H. Burrell, President and General Manager of Leavitt Stores Corporation, dated December 12, 1941; and from Senator Styles Bridges, dated December 13, 1941, which letters were all written to the Commanding General of the Philadelphia Quartermaster Depot on behalf of the plaintiff, constitute proper requests for extralegal relief as contemplated by the statute.

We believe these three letters were related to the appeal taken under the contract and, also, since they were not letters from the plaintiff they cannot be considered requests for extralegal relief. The plaintiff would have to make its own request or through its attorney. Nevertheless, the letters will be considered separately.

The letter from Mr. Straw on November 29, 1941, states in part as follows:

" * * * Raylaine Worsteds, Inc. deserves careful consideration of its *petition* because of its importance * * *." [Emphasis added.]

Further, in conclusion, the letter states:

" * * * we make this statement in the hope that it may be helpful to

you in your consideration of their *petition*." [Emphasis added.]

It is quite apparent that even if letters from others were considered proper requests for extralegal relief that the above letter could not be considered such. It is merely a request that the contracting officer give careful consideration to the *petition* on appeal already filed by the plaintiff *under the contract*.

The letter of December 12, 1941, from Mr. Burrell, merely gives the background of the plaintiff's mill and indicates that its (Leavitt Stores Corporation) primary interest in the entire affair is merely that of *self-interest*. Mr. Burrell wrote, in part, the following:

"These fines have been a great hardship to the Company, as the operating statement will show. My principal interest is that being the President of the largest department store in the state, employing from two hundred and fifty to three hundred people, in order to be able to have that many employees, we must have industries going, as Manchester is composed mostly of working people in an industrial city that grew up around the former Amoskeag Company.

"I hope, after investigation, you will give consideration to this company."

There is no request for extralegal relief here. It merely asks that the company be given consideration which it most certainly was given; twice by the contracting officer, once by the Quartermaster General, and twice by the Comptroller General. The letter must have been written at the instance of plaintiff in an effort to get a satisfactory determination of its then pending appeal.

The entire purpose and substance of Senator Bridges' letter of December 13, 1941, can be shown by the following quotation:

"* * * I am writing to inquire if, in view of the circumstances I have been informed governed the delay of deliveries against the contracts, some procedure can be followed by Raylaine Worsteds Incorporated by which the fines can be withdrawn or appreciably lowered and the Company allowed to continue its operations without this burden."

There is little doubt but that the letter had reference to the same matter covered by the plaintiff's letter of December 11, 1941, discussed below, and was undoubtedly intended to aid the plaintiff in getting favorable consideration of the appeal. The reasons that Senator Bridges cited as causing the delay were the same reasons cited on the appeal and in plaintiff's initial request for extension. Such causes were advanced as being permissible under the contract. Such cannot constitute requests for extralegal relief as contemplated by the statute. They were based on contract. The Senator wrote only "* * * * to inquire if * * * some procedure can be followed by Raylaine * * *" by which it can be relieved of the liquidated damages. He did not even make a plea on behalf of plaintiff.

Senator Bridges' letter was subsequently answered by the Commanding General of the Philadelphia Quartermaster Depot giving the Senator assurance that the plaintiff's request would be given every consideration "consistent with the contract terms." The Senator must have been satisfied with this reply as no further effort was made on his part to aid his constituent. Such indicates the letter was based on contract all the way through and not on extralegal relief.

In its reply brief, the plaintiff, in addition to the aforementioned letters, relies also on letters by it to the contracting officer dated December 11, 1941, and January 24, 1942. The letter of December 11, 1941,[1] merely stated the basis and

1. As noted in other parts of this opinion, in its letter of May 14, 1942 to the Quartermaster General, the contracting officer, erroneously classified plaintiff's letter of December 11, 1941, as the letter of appeal and pointed out that such

reasons for the appeal from the contracting officer's opinion of October 15, 1941, denying plaintiff's request for an extension of time, and requested him to reverse his decision in plaintiff's favor. The letter also submitted letters from plaintiff's suppliers explaining why they were late in their deliveries to plaintiff. The reasons specified in the letter of December 11 as causing the delays related to rights the plaintiff had under the contract and was not based on extralegal considerations.

Plaintiff's letter of January 24, 1942, also was nothing more than a reassertion of its position that it was entitled to extensions in delivery dates under Article 17 (the delays-damages clause) of its contract with the Government. The letter was merely an acknowledgment of the Government's letter of January 2, 1942, which acknowledged plaintiff's letter of December 11, 1941. That letter, as stated above, setting forth the legal reasons why, in plaintiff's opinion, it should recover under Article 17 of the contract. Any request for relief made in these letters sounds of contract and are not requests for extralegal relief.

Plaintiff, however, points to the fact that the Commanding General of the Philadelphia Quartermaster Depot in his letter of May 14, 1942, to the Quartermaster General in Washington said that the plaintiff's appeal (referring to the letter of December 11, 1941) may be considered as a plea for equitable relief. Subsequent action on the appeal, however, indicates that the Quartermaster General never considered it as such. The

Commanding General's statement would merely indicate that while the plaintiff had no legal right to recovery, there may be some equities involved under which he could fairly be given a remission of all or part of the already assessed liquidated damages. It is merely a recognition by that officer that the plaintiff *may* be entitled to some form of equitable relief. It does not appear that the Quartermaster General acquiesced in this feeling as he did not proceed accordingly. The statement does not constitute a request for extralegal relief *by the plaintiff* as required by the Lucas Act.

Nevertheless, plaintiff's letter of December 11, 1941, is founded only on contract and on nothing else. It continuously refers to the fact that the causes for the delay in delivery were unforeseeable and without its fault or negligence and, this being so, asks for relief from the liquidated damages. The letter even apparently concedes that almost $22,000 of the assessed liquidated damages were justified as the letter only requests the remission of $25,462 of the $47,000 already assessed.

Since there was no request for any relief other than requests which the plaintiff believed to be proper under the contract, the plaintiff is barred from recovery under the Lucas Act, and other issues in the case will not be discussed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

---

appeal was not taken within 30 days of the contracting officer's decision on October 15, 1941. Plaintiff's letter of November 13, 1941, was actually the letter of appeal but was never laid before the Quartermaster General. It seems that the net result of the error is of no effect, however, since the Quartermaster General evidently treated plaintiff's appeal, as referred to him, as adequate and proper and did not assign as a reason for denying recovery the fact that the appeal was untimely.