## C. P. AUSTIN, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**Springfield Court of Appeals, July 7, 1910.**

1. **PLEADING: Carriers of Passengers: Master and Servant: Personal Injuries: Sufficiency of Petition.** In a suit by a passenger against a carrier for injuries to the passenger, through the negligence of the carrier's servant or agent, it is not necessary for the petition in terms to charge that the act of the agent was within the scope of his authority; if the petition charges facts which show that the relation of passenger and carrier existed at the time, the liability is sufficiently alleged. The petition in this case examined and approved.

2. **CARRIERS OF PASSENGERS: Alighting at Dangerous Place: Master and Servant: Scope of Authority.** Plaintiff, a shipper of live stock, was traveling in the caboose of a freight train by which his cattle were being shipped. The engine broke through a bridge, wrecking the train, and the conductor requested plaintiff to go forward with him to help save the property. The caboose had stopped on a high embankment, the top of the road-

bed was narrow and the ground sloped at an acute angle; the night was dark and the ground covered with ice and sleet. Without warning from the conductor of this danger, the plaintiff alighted from the caboose, stepped off the roadbed, and fell down the embankment. *Held*, that the acts of the conductor, who was familiar with the danger, were within the scope of his authority, and that plaintiff's injuries were the proximate result of the negligent acts of the conductor, during the existence of the relation of passenger and carrier.

3. ———: **Duty to Passenger: Degree of Care Required: Railroads.** Railroad companies, as common carriers of passengers, are held to that degree of care which prudent men would take to guard against all dangers from whatever source arising, which may naturally and according to the usual course of things be expected to occur. They are not insurers of the safety of their passengers, further than can be required by the exercise of such a high degree of foresight and prudence in reference to possible dangers and in guarding against them, as would be used by very cautious, prudent and competent persons under similar circumstances.

4. ———: **Relation of Carrier and Passenger May Continue After the Passenger Alights from the Train.** A temporary departure from a train for any good, reasonable cause, without intention to abandon transportation, will not end the relation of passenger and carrier, and this relation was held to exist at the time of injury to a person who alighted from a caboose of a wrecked train at a dangerous place and at the invitation of the conductor, and who fell down an embankment directly after alighting.

5. ———: **Injury to Passenger: Alighting at Dangerous Place at Invitation of Conductor.** If the conductor of a train invites a passenger to alight from a car at a dangerous place, and the passenger alights and is injured, the carrier is guilty of negligence, and this is true even if the passenger is invited to alight to help rescue the persons and property in a wrecked train.

6. ———: ———: **Contributory Negligence: Carriers of Passengers: Injury to Passenger.** A shipper of live stock was traveling in the caboose of the freight train in which his stock was being shipped, when the engine broke through a bridge and the train was wrecked. At the invitation of the conductor he alighted from the caboose to go forward to help protect the lives of the trainmen and to look after his stock. On alighting he fell down an embankment and was injured. *Held*, that he was not guilty of contributory negligence and was justified as a prudent man in leaving the caboose under the circumstances.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*Jas. Orchard* and *W. F. Evans* for appellant.

(1) The master is not liable for the torts of its servant unless the tortious act of its servant causing injury was done while the servant was in the line of his employment, and acted within the scope of his employment. In this case the conductor had charge of the train, but had no authority, either express or implied, to require the passengers on his train to go forward and aid and assist him in taking care of defendant's property. Sherman v. Railroad, 72 Mo. 62; Cousins v. Railroad, 66 Mo. 572; Shelton v. Railroad, 60 Mo. 417; Mangen v. Foley, 33 Mo. App. 256; Hartman v. Muehlebach, 64 Mo. App. 574; Milton v. Railroad, 193 Mo. 56; Houck v. Railroad, 116 Mo. App. 570. (2) Plaintiff's petition in this case is insufficient, for the reason that it is not averred in the petition that the act complained of was one authorized by the master, or done by the servant while within the scope of his employment. Wood on Master and Servant (2 Ed.), 525; 2 Thompson on Negligence, 1244. (3) Beyond the scope of his employment the servant is as much a stranger to his master as to any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. Marrier v. Railroad, 17 N. W. 952; McPeak v. Railroad, 128 Mo. 636; Sherman v. Railroad, 72 Mo. 62.

*W. S. C. Walker* for respondent.

(1) The defendant is liable upon the facts proven because plaintiff was guilty of no negligence on his own part, and because he left the caboose upon the request

of the conductor who was in charge of the train. McGee v. Railroad, 92 Mo. 208; Houck v. Railroad, 116 Mo. App. 570. (2) The conductor was authorized under the circumstances being in charge of the train, in case of a wreck, to call upon passengers or strangers for assistance, and would thereby bind the company by his acts in that behalf. Nurse v. Railroad, 61 Mo. App. 67. (3) If the defendant had stopped the car at a dangerous point or place and invited a passenger to leave the car it would have been negligence for which the company would have been liable. Deming v. Railroad, 80 Mo. App. 158. (4) If the defendant company fails to furnish a passenger a safe place at which to alight it is guilty of negligence. Talbot v. Railroad, 77 Mo. App. 291; Eichorn v. Railroad, 130 Mo. 575. (5) When a passenger either voluntarily or on invitation leaves a car to render assistance to an employee of a railroad in connection with the train of which such employee is in charge, such passenger does not lose his status as a passenger, and if injured by reason of the negligence of the employee of the carrier, he may recover. 3 Hutchinson on Carriers, 1116; 2 White's Personal Injuries on Railroads, sec. 569; Railroad v. Bolton, 43 Ohio State 224; Railroad v. Salzman, 31 L. R. A. 261.

NIXON, P. J.—This action was brought by the plaintiff for alleged personal injuries, and, upon trial, he recovered judgment for two thousand dollars. The defendant in the trial court has appealed.

On January 30, 1905, the respondent shipped two car loads of stock from Senath, Missouri, consigned to the National Stockyards, East St. Louis, Illinois. Respondent accompanied the stock. After the train had left Cape Girardeau, a point on the route, a bridge gave way and the engine and one or two cars of the appellant went down in the wreck. The respondent, as stated, was a passenger on the train, accompanying his

stock to market. When the bridge gave way, the conductor, thinking the engineer and other members of the train crew were killed, requested the respondent and another passenger to go forward with him to help save the property. At the request of the conductor, the respondent did get out of the caboose, where he had been riding, for the purpose of obeying the directions of the conductor. The conductor, however, being ahead, went on with his lantern—it being dark—so that respondent had no means of ascertaining where they were getting off. In fact, the caboose had been stopped on a high embankment of the railroad, the top of which sloped down at a sharp angle. The top of the roadbed being narrow, and the ground sloping, and covered with ice and sleet, it was a dangerous place for a passenger to alight. The respondent, when trying to alight, or soon afterwards when making an effort to leave the caboose—the surroundings being wholly unknown to him—slipped and fell down the embankment which was about twenty-five or thirty feet high. He received serious injuries, as he claimed. The evidence tends to show that after he stepped down from the caboose, about the time his feet struck the ground, he stepped off or slid off the embankment and rolled over and over to the bottom. The evidence also tends to show that the conductor knew the location that the caboose was in at the time and knew the surroundings, and that there was ice and sleet on the ground; that he gave no warning, however, paying no attention to anyone. Plaintiff claimed that he suffered greatly by reason of his injuries and was still disabled at the time of the trial. With these facts submitted to the jury, a verdict for two thousand dollars in plaintiff's favor was returned.

The petition charges substantially the foregoing facts; also that the defendant is a corporation operating a railroad as a common carrier; that plaintiff shipped the stock and accompanied the same to market, and

that plaintiff at the time of his injury was entitled to passage on defendant's train from the point of shipment to the point of destination. The occurrence of the wreck is recited. That thereupon the conductor in charge of the train, as the agent of the defendant, called upon and requested the plaintiff to come out of the caboose and assist him in looking after the defendant's train, stating that the engineer and all the crew had apparently gone down in the wreck; that the defendant, by its conductor and agent, instructed him to get out of the side door of the caboose; that plaintiff, acting at the suggestion of the conductor, and for the purpose of aiding the conductor in saving the property of the company, attempted to get out of the caboose onto the ground; that he relied upon the directions of the conductor and had confidence in his knowledge and judgment within the scope of his employment. That the point where the caboose was stopped was on an elevation barely as wide as the ties on which the rails were laid, and that the roadbed sloped down from the top at an acute angle and offered no place to one who might wish to alight; that the place was covered with ice and sleet and that it was very difficult for one to retain his footing. That all of said facts were known to the agent of the defendant but unknown to the plaintiff. That the plaintiff, in trying to alight pursuant to the invitation of the conductor, while using due care on his part, by reason of the dangerous condition of the ground and the inclination and slope of the embankment, was precipitated to the ground, his feet slipped, and he fell and rolled down the embankment, receiving great injuries, etc., that his ankle was broken and that other parts of his body were bruised, cut and torn. That the act of the conductor under the circumstances was within the scope and reach of the employment of such agent of the defendant, and that the plaintiff relied upon and attempted to follow the directions of the defendant through its agent, thinking that the same might be

safely complied with, and that he might leave the car
without danger; that the injuries received were in no
sense the result of his own negligence or carelessness.

The answer was a general denial and a plea of contributory negligence.

It is claimed by the appellant that the petition
is insufficient because it does not aver that the act complained of was one authorized by the master or done by
the servant while within the scope of his employment;
and, further, that the conductor in charge of the train
had no authority, express or implied, to request passengers to assist him in taking care of the appellant's property.

This objection to the petition—that it does not aver
that the master authorized the act complained of—is
based upon an entire misapprehension of its contents.
The petition in so many words charges that the act of
the conductor in calling upon the plaintiff to aid, in the
manner aforesaid, under the circumstances aforesaid,
was within the scope and reach of the employment of
said agent of the defendant.

The law in this State is well settled and it has
been uniformly held that it is not necessary for the petition in terms to charge that the act of the agent was
within the scope of his authority; if the petition charges
facts which show that the relation of passenger and
carrier existed at the time, the liability is sufficiently alleged. [McPeak v. Mo. Pac. Ry. Co., 128 Mo. 617, 30
S. W. 170.]   In the case just cited, it is stated that
while the servant to bind his employer must be in the
line of his duty to such employer, yet if the petition
states the existence of such a relation from which that
duty necessarily arises, it is sufficient without further
averment.

The petition in this case fully meets every requirement of good pleading, and the evidence supports the
verdict.   Plaintiff's injuries were the proximate result
of the negligent acts of the conductor during the contin-

uance of the relation of passenger and carrier, and under such circumstances, it cannot be doubted that the conductor was in the line of his employment; and, while such relation existed, his acts toward the passenger, in contemplation of law, were authorized by the carrier, either expressly or impliedly, to such an extent that the doctrine of *respondeat superior* applies.  Although a common carrier of passengers is not, like a common carrier of goods, an insurer against everything but the act of God and the public enemy, yet the law does require common carriers of passengers to use care, vigilance and foresight to prevent accidents to the passenger.  To require anything less would be to leave the lives of the passengers in the hands of the reckless, unprotected against the neglect of the incautious.  [Gilson v. Railway Co., 76 Mo. 282; Hite v. Street Ry. Co., 130 Mo. 132, 31 S. W. 262; Johnson v. St. Joseph Ry. L., H. & P. Co., 128 S. W. 243; Tuller v. Talbot (Ill.), 76 Am. Dec. 695; Ingalls v. Bills, 43 Am. Dec. 346; Bowen v. N. Y. C. R. Co. (N. Y.), 72 Am. Dec. 529.]  These authorities sustain the doctrine that railroad companies as common carriers of passengers are held to that degree of care which prudent men would take to guard against all dangers, from whatever source arising, which may naturally and according to the usual course of things be expected to occur.  They are not insurers of the safety of their passengers further than can be required by the exercise of such a high degree of foresight and prudence in reference to possible dangers and in guarding against them as would be used by very cautious, prudent, and competent persons under similar circumstances.

In this case, at the time the request was made by the appellant's conductor to the plaintiff, undoubtedly the relation of passenger and carrier existed, for at such time plaintiff was still within the caboose of the appellant.  But the plaintiff did not cease to be a passenger, although alighting or attempting to alight from the train before he reached his destination.  A temporary de-

parture from a train for any good or reasonable cause without intent to abandon transportation will not end the relation of passenger and carrier. [Parsons v. N. Y. C. & H. R. R. Co. (N. Y.), 21 N. E. 145; Dodge v. Boston & B. S. S. Co. (Mass.), 19 N. E. 373; Hutchinson on Carriers, sec. 1012.] We think the relation of passenger and carrier existed beyond all question between the plaintiff and defendant at the time of the injury, although the actual transit as such had been interrupted for the time being by the wrecking of part of the train. The plaintiff at such time had not abandoned his intention or his right to complete his journey in the defendant's cars, and the conductor, while such relation existed, expressly invited the plaintiff to alight from the train when the extreme and impending peril of alighting at such place in compliance with the request was concealed from the plaintiff, but known to the conductor. The invitation given to the plaintiff by the conductor to alight—which constitutes the gravamen of the charge of negligence in this case—was while plaintiff was still a passenger on the defendant's train and while defendant owed the plaintiff the duty to protect him from injury by alighting from the car, and the further duty of informing him of the dangers of such act. From the most favorable point of view, the contract of the carrier with the plaintiff as a passenger involved at least the exercise of reasonable care, according to the nature of the contract, and as the contract involved the safety of the life and limb of the plaintiff, the law required of the defendant's agent in charge of the train the highest degree of care consistent with the nature of the undertaking. [Warren v. Fitchburg R. Co., 85 Am. Dec. 700.] If the conductor of a train invites a passenger to alight from the car in which he is riding, at a dangerous place, the carrier is guilty of negligence. [Houck v. C. & A. Ry. Co., 116 Mo. App. 570, 92 S. W. 738; Eichorn v. M., K. & T. Ry. Co., 130 Mo. 575, 32 S. W. 993; McGee

v. Mo. Pac. Ry. Co., 92 Mo. 208, 4 S. W. 739; Nurse v. St. L. & S. F. R. Co., 61 Mo. App. 67.]

It is, indeed, suggested by the appellant that the plaintiff was not required, on the conductor's invitation, to go to the rescue of its endangered property; but because the plaintiff, a passenger, was called from a place of safety into a place of danger by the conductor in charge of the train to assist such conductor in looking after the property of the company and the lives and safety of the employees, and because plaintiff heeded this call of humanity, and at the invitation of the conductor, alighted from the train to go to the rescue of such property and employees, the defendant company will hardly be heard to urge that it consequently incurred no liability because its conductor was not acting within the scope of his authority. The relation of passenger and carrier, as we have stated, existed, and from that relation springs the duty of the defendant company. Assuming that it is true, as claimed by the defendant, that the conductor in charge of the train had no express authority to require passengers on his train to go forward to the wreck and assist him in taking care of its property, it must be remarked in this connection that the plaintiff himself had two cars of stock on that train, and he recognized his duty to look after this stock and ascertain its condition. He was interested in having his stock reach its destination safely, and in being himself safely transported. Under these circumstances, his act was that of a prudent and reasonable man and was justified by the conditions which surrounded him, and was not the wrongful interference and intermeddling with business in which he had no concern. [McIntire Ry. Co. v. Bolton, 1 N. E. 1. c. 335.] In complying with the conductor's request at the time and place and under the conditions surrounding the cars, plaintiff, without fault on his part, received serious personal injuries. The conductor unquestionably was acting at the time within the scope of his authority, and

the plaintiff furnished ample evidence to warrant the jury in finding that the conductor was negligent in asking or inviting him to get out of the caboose at the dangerous place in which it was then situated, which danger, the evidence shows, was known to the conductor, but unknown to the plaintiff. Under such circumstances, the failure to give plaintiff any warning of the danger surrounding him was negligence, for which the defendant was responsible.

We have examined appellant's assignment that the damages assessed by the jury—two thousand dollars—were excessive. On careful scrutiny of the nature and extent of the injuries sustained by the plaintiff, and the pain and suffering necessarily undergone by him, we are unable to say that such an assessment of damages showed bias or prejudice on the part of the jury.

Finding no error in the record, the judgment is affirmed. All concur.