S. J. BROOKS, Respondent, v. THE UNION DEPOT
BRIDGE & TERMINAL RAILROAD COMPANY,
Appellant.*

In the Kansas City Court of Appeals, January 29, 1923.

1. JUDGMENT: New Trial: Res Adjudicata: Sustaining Defendant's
Motion for New Trial Not Equivalent to a Judgment in Its Favor
Constituting Res Adjudicata Preventing Further Proceedings, Until
Such Judgment Was Reversed on Appeal. Sustaining of defendant's
motion for new trial is not an adjudication of plaintiff's
cause of action, but merely goes to the right of defendant to a
new trial, placing the parties in .the same position as before the
trial, and the fact that trial court gave reasons therefor and that
thereafter plaintiff appealed from an order overruling his motion
to set aside the order and judgment granting the new trial,. the
same was not equivalent to a judgment in defendant's favor so as
to prevent plaintiff, who had dismissed his appeal, from proceed-
ing further until such judgment granting a new trial was reversed
on appeal.

2. APPEAL AND ERROR: Finding of Jury Supported by Substantial
Evidence Will not be Disturbed on Appeal. If there is any substan-
tial evidence to support the verdict and judgment, the appellate.
court is not permitted to disturb the finding of the jury.

3. CARRIERS: Negligence: Invitation: Carrier Held Required to Keep
Landing Place Reasonably Safe for Use. Where a carrier construct-
ed a landing place for use of patrons and established lights to guide
them in crossing the tracks, it thereby invited them to use the
crossing, and the duty devolved upon the carrier thereby to keep
the place reasonably safe for such use.

4. ———: ———: ———: Patron of Carrier not Guilty of Contribu-
tory Negligence in Deviating at Night from Path Provided for Cross-
ing Track Where Lights Established to Guide Patrons Were not
Lighted. Where a carrier impliedly invited patrons to cross its
tracks to a landing at a street intersection, plaintiff, whose foot
was caught in a switch, held not guilty of contributory negligence,
as a matter of law, because he deviated in nighttime from the
path prepared for such crossing, where the evidence was that the
lights established for guidance of patrons were not burning at time.

5. ———: Evidence of Carrier's Negligence Held to Justify Submission
of Case to Jury. In an action for personal injuries to passenger
who after alighting from car in using path provided for crossing

. track, caught his foot in switch thereof, evidence *held* sufficient to 'justify submission of case to jury.

6. ———: **Instructions: Instruction as to Customary Use of Crossing Held to Sufficiently Restrict Jury to Facts Shown in Evidence.** In action against carrier by plaintiff for injuries received by having foot caught in switch at crossing, an instruction requiring jury to find that large numbers of persons, at the time of the occurrence and for a long time prior thereto, customarily used said crossing, *held* to sufficiently restrict the jury to the facts shown in evidence.

*Headnote 1. Trial, 29 Cyc, pp. 1028, 1030 (1926 Anno); 2. Appeal & Error, 4 C. J., Section 2834; 3. Carriers, 10 C. J., Section 1343; 4. Carriers, 10 C. J., Section 1492 (1926 Anno); 5. Carriers, 10 C. J., Section 1461; 6. Carriers, 10 C. J., Section 1477.

Appeal from Circuit Court of Jackson County.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Gamble, Trusty & Pew* for respondent.

*Kenneth M. DeWeese* and *Cyrus Crane* for appellant.

ARNOLD, J.—This action for damages for personal injuries has twice been tried in the court below. At the first trial plaintiff had judgment and defendant filed its motion for a new trial, supported by affidavits, which said motion was sustained by the court, upon the following grounds, set forth in writing at the request of plaintiff:

"1. Because the court erred in not sustaining the demurrer by the defendant offered at the close of plaintiff's testimony.

2. Because the court erred in not sustaining the demurrer by defendant offered at the close of all the testimony in the case.

3. Because the court erred in giving the jury instruction numbered (1) one for and on behalf of plaintiff.

4. Because the court is satisfied that mistake has been committed by witness testifying on behalf of the

plaintiff with reference to the matter to which reference is made in the affidavits filed in support of defendant's motion for a new trial; and is also satisfied that an improper verdict or finding, and the finding or verdict in this case was occasioned by such matters; and that the defendant has a just defense thereto; to which further findings and assignments by the court the plaintiff at said time excepted and still does except.''

Plaintiff then filed a motion to set aside the order and judgment granting a new trial, and upon the denial of same by the court, plaintiff perfected his appeal to this court.

Before the case was reached here, plaintiff dismissed his appeal and asked for a setting and trial anew in the circuit court. Defendant objected to the empanelling of the jury at the beginning of the new trial, and also objected to further proceedings therein and to the further introduction of evidence, for the reason that on the record as made, plaintiff was not entitled to proceed further, in that the reasons assigned by the court (at the request of plaintiff), for sustaining defendant's motion for a new trial, coupled with the subsequent appeal therefrom by plaintiff, were equivalent to a judgment in defendant's favor, and prevented plaintiff from proceeding further until such judgment was reversed. The objections were overruled and the trial proceeded, resulting in a verdict and judgment for plaintiff. Defendant appeals.

Defendant, a corporation, owned and operated a street car line beginning in the north part of Kansas City, Mo., crossing the Missouri River over the Armour-Swift-Burlington bridge, running north to North Kansas City, in Clay County, Mo., making practically a circle therein, and returning by way of said bridge to Kansas City, Mo.

At the time of the injury in question plaintiff was working as a locomotive engineer for the Chicago, Burlington & Quincy Railroad Company in what is known

as its Murray Yards in North Kansas City. In order to reach his place of work, plaintiff used the street car line above described. On June 9, 1918, he became a passenger on one of defendant's cars in Kansas City, Mo., and was transported thereon to the regular stopping place at the intersection of 14th street and Burlington avenue in North Kansas City. When the car stopped plaintiff alighted therefrom at the landing provided on the east side of the northbound track. It was about 10:45 p. m., "daylight saving" time then in use, or 9:45 standard time. Plaintiff attempted to cross the two tracks lying west of him on his way to the Murray Yards, located some distance west of the car tracks, and reached by crossing some intervening fields. At the point where plaintiff alighted, defendant maintains two parallel tracks on Burlington avenue, the west tracks being used for southbound cars and the east for those northbound. At or near the intersection with 14th street, said tracks turn eastward into 14th street.

Plaintiff, in his petition, states that after waiting for the car to pass, from which he had alighted, he attempted to cross the tracks, going in a northwesterly direction toward an "umbrella shanty" maintained by defendant on the west of the tracks near the street intersection and that while thus proceeding, his foot caught at one of the points where the rails of said track running east into Fourteenth street break out of the west or southbound track; that because of getting his foot so caught he fell and thereby "the bones, ligaments, muscles, tissues, nerves and vessels of his left ankle and leg in and around the ankle and foot were broken, torn, lacerated and injured," etc.

The evidence tends to show that the switch point, or frog, in which plaintiff's foot is alleged to have been caught, is immovable and unblocked. The testimony further tends to show that at the intersection of the streets above mentioned, the defendant company maintains an electric light on the north side of a trolley pole, for the

purpose of furnishing light to its patrons, but that on the occasion in question, no light was burning.

The second amended petition on which the case was tried, charges that defendant negligently failed (a) to keep said place lighted or to have warning lights or barricades at said place; (b) carelessly and negligently maintained tracks, switches and frogs in a dangerous and not reasonably safe condition for the use of persons and passengers walking thereover; (c) failed to give plaintiff any warning of danger; (d) failed to block the switch into which plaintiff's foot is alleged to have slipped, and alleges that the acts of negligence, above enumerated, operated concurrently to cause said injuries. The answer is a general denial and contains pleas of contributory negligence and assumed risk. The reply is a general denial.

The court submitted the case to the jury, over defendant's objections, overruling its request for a peremptory instruction in its favor, and the jury returned a verdict for plaintiff for $3000. After unsuccessful motions for a new trial and in arrest of judgment, defendant appeals.

It is urged, as grounds for reversal, that "the court erred in refusing to sustain defendant's objection to the empanelling of the jury and to further proceedings on the second trial, for the reason that the action of the court in sustaining defendant's motion on the first trial and the reasons given therefor were equivalent to a judgment in defendant's favor, that they made a finding in favor of defendant *res adjudicata* and prevented further proceedings until such judgment in defendant's favor was reversed on appeal."

Supporting this position, defendant argues that the motion for a new trial was sustained upon points of law, not of fact, arising upon the proof; that it, therefore, disposed of the case on the merits, as fully as a directed verdict would have done, and therefore, was a final judgment, binding and conclusive unless reversed on appeal. In this connection defendant cites Buckles v. Rail-

road, 53 Fed. Rep. 566, l. c. 567, citing 2 Black on Judgments, sec. 691:

"'Regard is now had less to form of the proceeding and more to the substance and condition of the decision. Further, there is a distinction to be noted between orders made upon motions respecting collateral questions arising in the course of a trial and final orders affecting substantial rights, and from which an appeal lies. The latter are *res adjudicata,* and binding upon the parties, unless reversed or modified by an appellate tribunal.'

"So Freeman, in his work on Judgments (sections 325, 326), recognizes the same important distinction that, where 'the decision of a motion is as final and conclusive as the decision of a trial, if the proceeding permits of a full hearing upon the merits, and the order made is liable to review in some appellate court,' it is conclusive on the parties."

In Spitley v. Frost, 15 Fed. Rep. 299, l. c. 305, it is said:

"There are many cases in the books which hold, as a general rule, that orders and decisions of courts made in passing upon motions are not *res adjudicata.* But there is a distinction to be noted between orders made upon motions respecting collateral questions, arising in the course of the trial and final orders affecting substantial rights, and from which an appeal or writ of error will lie. It is believed that the test is the one here suggested. If the order is one affecting substantial rights, is in its nature a final order, and one which may be reviewed upon appeal, it is an adjudication binding upon the parties unless reversed or modified by an appellant tribunal."

Also it is insisted that the ruling in Commissioners of Wilson Co. v. McIntosh, 30 Kans. 234, sustains defendant's contention in this respect. These citations are all based upon substantial rights, and we think a definition of the term "substantial rights" might be illumi-

native of this question. Webster's definition of the term as used in law is, as follows:

"A substantial right is a right affecting or involving a matter of substance, as distinguished from matters of form or the like; a right materially affecting those interests which a man is entitled to have preserved and protected by law; a material right. The term derives its chief importance from its use in provisions allowing appeals contained in various codes of procedure, thus, an order imposing a property obligation or loss is one affecting a substantial right; but an order affirming an order refusing to open a default is not."

The sustaining of defendant's motion for a new trial is not an adjudication of plaintiff's cause of action, but merely goes to the right of defendant to a new trial. It hardly will be contended that a trial judge, merely by giving his reasons for sustaining a motion for a new trial thereby creates a judgment which must be reversed by an appellate court before a new trial may be had. Before verdict, the court may sustain a demurrer and instruct the jury to return a directed verdict. In sustaining a motion for a new trial, the court, in effect, says it should have done at the end of the trial what it failed to do. But at this stage, after verdict has been rendered, there is no jury to be instructed. Therefore the granting of a new trial places the parties in the same position as before the trial and no judgment thereafter could be rendered on the merits of the case until there is a new trial. [Star Bottling Co. v. Exposition Co., 240 Mo. 634, 144 S. W. 776; Hurley v. Kinneally, 186 Mo. 225, 85 S. W. 357.] We hold the reasons given by the trial court for sustaining the motion for a new trial are tantamount to a holding that there was insufficient evidence to sustain the verdict. It was, therefore, the duty of the court to sustain the motion for new trial. [Deiermann v. Bemis Bag Co., 163 Mo. App. 522, 143 S. W. 1197.] In the Bottling Co. case, supra, it was held that when a new trial is granted, the reasons for so doing fill no appreci-

able office thereafter. It will not be contended that plaintiff had not the right to dismiss his appeal in this court, and when that is done, the cause stands in the trial court as if there had been no trial. The question presented is a novel one and is most ably presented by counsel, but under the law as above declared, we must rule against the contention of defendant.

Further, it is urged, that on the entire record the verdict should have been for defendant, and that the court erred in overruling defendant's demurrer at the close of plaintiff's case and in refusing defendant's peremptory instruction at the close of all the evidence. The rule is not questioned that if there is any substantial evidence to support the verdict and judgment, this court is not permitted to disturb the finding of the jury.

Plaintiff's testimony tends to show that defendant had constructed the landing place on the east side of the tracks for use of patrons and that it had been so used for a number of years. Plaintiff was such a patron. It is further shown in evidence that defendant had established lights to guide persons in crossing the tracks at the street intersection in question, thus, in a way, inviting patrons to cross at that point and that said lights were not burning on the night plaintiff was injured. In thus inviting patrons to use the crossing in question, a duty devolved upon defendant to keep the place reasonably safe for such use.

Defendant contends that plaintiff abandoned the charge of negligence based upon failure to have the lights burning, and that he is limited in his recovery to the charge that the switch points, or frogs, were not blocked. Defendant urges, and there was evidence tending to show that plaintiff deviated from the gravel, or cinder, path prepared for such crossing; while the testimony of plaintiff tends to show that the way was not definitely marked or restricted.

In Chase v. Railroad, 134 Mo. App. 655, 114 S. W. 1141, it was held that under an implied invitation to its passengers to use a roadway which failed to restrict

patrons to the use of a certain space therein, a person injured is not deprived of his right to recover because he unwittingly deviates therefrom. Where no definite way is marked out for such pedestrians, the question of negligence is for the jury. Where a passenger selects a way to leave a landing place and is injured, even though he may have known of the existence of a defect, the question of his forgetfulness of such defect, is a circumstance for the consideration of the jury. So in the case at bar, there is substantial evidence in support of plaintiff's case and we are not warranted in declaring that he was guilty of contributory negligence as a matter of law. There was no error in the action of the court in submitting the question of plaintiff's contributory negligence to the jury. We have examined defendant's citations on this point and find nothing therein to warrant a different ruling.

This brings us to a discussion of defendant's remaining assignments of error, to-wit, that plaintiff's instruction No. 1 is erroneous. That part of the instruction to which the charge of error is directed is as follows:

". . . and if you further believe and find from the evidence that on or about the 9th day of June, 1918, and for a long time prior thereto defendant's tracks at said intersection were and had been customarily used by a large number of persons going to and from said stopping place and by walking in a northwesterly direction, and that defendant knew of such use by such persons, if so, and permitted, if so, such persons to use said tracks at said intersection in crossing from one side to the other in the manner in which the plaintiff claims he was doing when injured," etc.

The alleged error pointed out is that the jury were permitted to find that "large numbers of persons crossed the tracks at this intersection going to said stopping place—the one on the east side of the tracks." It is insisted there is no evidence to support a finding that persons crossed the tracks in going to the east land-

ing place and that, as a matter of fact, the men working in the Murray Yards, when returning from their work, used the "umbrella shanty" as a place for taking southbound cars to Kansas City.

It will be noted that the part.of the instruction above quoted required the jury to find that on or about June 9, 1918 "and for a long time prior thereto, defendant's tracks at said intersection were, and had been, customarily used by a large number of persons . . . and by walking in a northwesterly direction," etc. We think the last clause sufficiently restricts the jury to the facts shown in the evidence. If there is any error in the instruction in this respect it is because it placed upon plaintiff a greater burden than he was required to assume, but we see nothing therein prejudicial to defendant. An examination of the record discloses there was testimony offered by numerous witnesses on behalf of plaintiff that there were passengers coming from the Murray Yards who used the northbound street cars at the intersection in question, and that they crossed the tracks from the west to the landing place on the east side thereof. We are unable to say there was error in the instruction of which complaint is made.

For the reasons above stated, we hold the verdict and judgment should be affirmed. It is so ordered. All concur.