BLANCHE WATTS, RESPONDENT, v. FRED W. FLEMING, ET AL., APPELLANTS.*

Kansas City Court of Appeals. June 27, 1927.

1124

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2830, p. 844, n. 67; Carriers, 10CJ, section 1340, p. 916, n. 53; section 1392, p. 979, n. 5; section 1455, p. 1067; n. 80; section 1469. p. 1079, n. 48; Evidence, 23CJ, section 1779, p. 38, n. 35.

*Wm. K. Ward* and *E. A. Scholer* for respondent.

*Chas. L. Carr* and *Louis R. Weiss* for appellant.

WILLIAMS, C.—This is a case in which the widow sues for the death of her husband. Trial was had and a verdict rendered for the plaintiff in the sum of $5708.

The evidence discloses that Oliver Watts was the husband of the plaintiff; that on the 25th day of October, 1921, he was struck by an automobile which was traveling in a westerly direction across the public viaduct in Kansas City, Missouri, known as the 23rd street viaduct.

No point is made as to the pleadings nor the size of the verdict, and it is conceded that the deceased died from the injuries sustained by being struck by the automobile. The 23rd street viaduct was being constructed at the time of the accident. This viaduct reached from Kansas City, Kansas, across the Kaw River, thence eastwardly over a number of railroad tracks in Kansas City, Missouri, to a point on Bluff street, Kansas City, Mo. On the south side of the viaduct from one end to the other, was a sidewalk. North of the sidewalk was a space about forty feet wide for other traffic than pedestrians. On the north side of this road for vehicular traffic, were to be the street car tracks. There was a lead off the viaduct on Wyoming street. This lead was not completed and in use at the time of the accident. There were no permanent lights at the time of the accident on the viaduct. There were a few red lanterns in the Wyoming street approach marking the location of materials and warning that the Wyoming street approach was not yet completed.

The defendants were operating street cars from the Kansas side to a point near this incomplete Wyoming street approach. Witness Burkwell testified that in the operation of the street railroad, a car was run eastwardly to the obstruction caused by the building of the

company's tracks on the viaduct, and a car was run westwardly to the other side of the obstruction or, in other words, the line was continuous except where the track was not completed. Witness further testified that the passengers walked from one car to the other. The car running eastwardly had a double trolley so it could be more easily run back over the same track. The distance between the ends of the two lines was 500 or 600 feet. Work was proceeding so as to connect the gap between the two lines. Transfers were given on the Kansas side. These transfers were good on the lines to the east of the incompleted piece of track as well as other lines in Missouri.

On the evening of the accident, deceased worked later than usual and started home on the street car operated by the defendant. He made one transfer and reached the eastern end of defendant's line on the viaduct. Deceased was riding with one Hodges who worked with him at Peet Brothers Soap Factory. At about 7 P. M. deceased and Hodges got off defendant's car at the eastern end of the line as above described, and was proceeding toward the east or the Missouri end of the viaduct, there to take the car of defendant to continue their journey. The night was dark and cloudy and rain and hail fell in the afternoon. There were no lights of any kind upon the viaduct or at the place where deceased was struck, except possibly some red lanterns. When deceased and his companion had proceeded sixty or seventy feet eastwardly in the space for vehicular traffic and six or seven feet south of the space reserved for defendant's tracks, toward the car lines of defendant, an automobile traveling at a high rate of speed and without lights, struck deceased. There was no obstruction between the place where deceased alighted and the sidewalk, but to reach the sidewalk it was necessary to cross the roadway or space used for vehicular traffic.

There seems to have been no way for deceased to have reached the lines of defendant eastwardly, except by walking across the viaduct.

The driver of the automobile that struck deceased, did not stop and his identity was never discovered. The approach leading to 23rd street was not completed. Deceased did not go straight toward the sidewalk, but as stated by witness Hodges, his companion at the time of the accident:

"Well, we just got off and started on out, of course the cars were passing, we started on out to get out of there, and before we could cross the street, why, he was run into.

"We were partly across the roadway, were, after we got off the street car, partly across, and I don't know just how far we had gotten, we had not gotten very far."

The evidence shows that deceased had been using this route for some time.

The defendants insist that a demurrer should have been sustained, and place this contention on two grounds, to-wit: First, that there was no negligence upon the part of defendants. Second, that even if there was negligence it was not the proximate cause of the death of the deceased.

No Missouri cases are cited or have we been able to find anything in this State, directly covering the facts as detailed in evidence.

In discussing the first proposition it is necessary to determine the *status* of the deceased with reference to being a passenger at the time of the accident.

And in considering the demurrer we are required to disregard defendant's evidence unless it aids the plaintiff's case. [Watson v. Carthage Marble & White Lime Co., 290 S. W. 649, l. c. 650.]

In discussing the first point urged by the appellant, the case of Mary Creamer v. West End Street Ry. Co., 156 Mass. 320, 31 N. E. 391, is largely relied upon. This case is approved by the Tennessee court in Chattanooga Electric Ry. Co. v. Boddy, 105 Tenn. 666, 58 S. W. 646, by the Nebraska court in Jacobson, Admr., v. Omaha & C. B. St. Ry. Co., 109 Nebr. 356, 119 N. W. 327, by the Iowa Supreme Court in Morris v. Omaha & C. B. St. Ry. Co., 187 N. W. 510, and by the Oregon court. This case seems to be well considered and approved by the appellate courts of many states. We think that while it embodies a principle that should have been submitted to the jury, it is not conclusive as the facts may be viewed from a different angle.

In deciding on the case of Mary Creamer v. West End Street Ry. Co., supra, the court said:

"He had ridden as a passenger upon another car, which he had left immediately before he was killed. When struck, he was walking across Warren street, had taken one or two steps from the place where he had touched the ground on leaving his car, and was between the rails of the track on which was the car by which he was struck. He had not reached or had time to reach the sidewalk of Warren street, but he had left the car on which he had been a passenger, and had taken his progress on foot across the street. We are of the opinion that he was not a passenger when the accident occurred, and that he ceased to be a passenger when he alighted upon the street from his car. The street is in no sense a passenger station, for the safety of which a street railway company is responsible. When a passenger steps from the car upon the street, he becomes a traveler upon the highway, and terminates his relations and rights as a passenger, and the company is not responsible to him as a carrier for the condition of the street, or for his safe passage from the car to the sidewalk. When a common carrier has the exclusive occupation of its tracks and stations and can arrange and manage them as it sees fit, it may be properly held that persons intending to take passage upon or leave

a train have the relation and rights of passengers in leaving or approaching the cars at a station. But one who steps from a street railway car to the street is not upon the premises of the railway company, but upon a public place where he has the same rights with every other occupant and over which the company has no control. His rights are those of a traveler upon the highway, and not of a passenger.''

In Mary Creamer v. West End Street Ry. Co., supra, the injured party had terminated all connection with the carrier and the plaintiff had no transfer. There was no indication, in that case, that she was in the course of a continuous passage. In the case at bar the cars of the defendant approached the incompleted piece of track from each end, and as plaintiff's witness testified, there was a car waiting at the end of the ''construction,'' and defendant's witness testified that the passengers were interchanged from these cars by walking back and forth. The mere fact that the deceased had a transfer would not entitle him to recovery and can only be considered in connection with the other facts.

Defendant might have selected other points to stop their cars which would have been less dangerous and better lighted. The defendants knew, when they stopped their car on the incompleted piece of track, that the passengers would transfer to the car upon the other side of the incompleted track or would have to walk the entire distance, passing the waiting car. That a car was waiting was testified to by Richard Hamer.

Killmeyer v. Wheeling Traction Co. (W. Va., 1913), 77 S. E. 908, and cases involving a transfer of passengers are in point upon the respondent's theory of the case.

In Davis v. Central Construction Corp. (Md.), 124 Atl. 396, the court held that where a passenger was directed to get off the train when it stopped and take another train and was misdirected as to the proper place and was injured, the court held that he had not ceased to be a passenger.

It may be argued in the case at bar that there was no invitation. We concede that there was no expressed invitation but when the car, upon which deceased was riding, reached the end of the line, it was as necessary for him to leave, as if he had been invited to leave, and there can be no doubt that the company's agent and servants knew he was intending to take the car at the other end of the incompleted track.

In Swink v. Philadelphia Rapid Transit Co. (Pa., 1925), 120 Atl. 827, it was held that a passenger upon being requested to transfer was a passenger while walking from car to car.

Again in Louisville & S. I. Traction Co. v. Walker (Ind.), 97 N. E. 151, passenger was required to leave the car in which he was riding

in order to complete her journey, excavations in the track prevented the car in which she was riding from proceeding. She was injured by the unevenness of the street. The court held that she was a passenger and entitled to the highest degree of care for her safety. [Also Alabama Power Co. v. Hall, 103 So. 867; Colorado Springs Ry. v. Petit, 86 Pac. 121; Powers v. Old Colony St. Ry. Co., 87 N. E. 192.]

The Supreme Court of the State of Michigan in Moffatt v. Grand Rapids Co., 200 N. W. 274, broadly states the rule thus: "If plaintiff took passage on defendant's railway line, intending to make a journey to the southwestern part of the city, paid his fare, and took a transfer to the Grandville avenue line, the usual place of transfer, he was a passenger while on defendant's car; he was a passenger while making the transfer or while waiting to transfer, and he was a passenger after he was seated in the Grandville avenue car."

In the view we take of the case this was a question of fact to be submitted to the jury.

It is next contended that, even if plaintiff made a case for the jury upon the question of negligence of the defendants, this negligence was not the proximate cause of the accident.

It is unnecessary in this State to look further than the case of Daneschocky v. Sieben et al., 193 S. W. 966, l. c. 967, which reviews the doctrine and states the Missouri rule thus: "We think that where the character of the first wrong is such that an injury will naturally, or probably, result, though it is a result following another cause which has intervened, it is a result that should reasonably have been foreseen or anticipated by the first wrongdoer and he should be held liable. An intervening cause should not be held to excuse the first cause unless such intervening cause is one so unusual and so improbable as not to be reasonably foreseen or considered by an ordinarily prudent man. Otherwise, one could say: 'I will commit this negligent wrong, though I know, or believe, it will probably cause another negligent wrongdoer, another intervening independent agency, to commit an injury.'"

In stating the rule the court was discussing a case where the contractor was constructing a building. The contractor had piled material across the sidewalk, the injured party was walking around the material and was struck by an automobile which was traveling in a negligent, if not in a criminal manner. The point was made in a suit against the contractor that the piling of the material was not the proximate cause. The above language was used in answering that contention.

Under the authority of Daneschocky v. Sieben et al., supra, we rule this point against the appellant.

It is next contended that the instructions one and two given on the part of the plaintiff were erroneous, in that it submitted the question as to whether or not the place where the car stopped was a regular

stopping place. It seems, under the view we have taken of the case, that it was a question of fact as to whether or not this was a regular stopping place. Of course, if the jury was bound by the evidence of defendants' witnesses, it would have been error to have submitted this question, but the jury was not so bound.

We think from what we have stated, the plaintiff made a case for the jury. Judgment affirmed. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.