Fred W. SEILER (Plaintiff), Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation (Defendant), Appellant.

No. 29365.

St. Louis Court of Appeals.

Missouri.

Nov. 7, 1956.

L. F. Stephens, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for appellant.

Marvin S. Wood, St. Louis, Cleo V. Barnhart, St. Louis, of counsel, for respondent.

MATTHES, Judge.

This case comes to the writer on reassignment.

■ On the night of October 17, 1952, while plaintiff was transferring from one motor bus to another, the front of one of his shoes caught between the surface of the sidewalk and a metal water shut-off box which protruded above the level of the walk, causing him to fall and sustain injuries. Plaintiff recovered a verdict and judgment for $1,250. Defendant has appealed, urges that a submissible case was not made, and that the trial court should have sustained its motion for a directed verdict and judgment. Defendant's theory is that after plaintiff was safely discharged from its bus upon the public sidewalk, his status as a passenger was terminated, and that no duty flowed from defendant to plaintiff while he was moving from one bus to the other. If this position is sustained, then the judgment cannot stand because it is well settled that there must be a duty raised by the law and breached by the defendant before an action for negligence lies. Kelly v. Benas, 217 Mo. 1, 9, 116 S.W. 557, 559, 20 L.R.A.,N.S., 903; McGuire v. Chicago & A. R. Co., Mo.Sup., 178 S.W. 79, L.R.A.1915F, 888.

A careful review of the record discloses that plaintiff boarded a motor bus referred to as a "Goodfellow Bus", and paid the required fare. The bus proceeded southwardly on Goodfellow to Delmar Boulevard (both in St. Louis, Missouri), where it made a left turn and proceeded eastwardly for a short distance. A bus zone sufficient in length to permit two buses to stop, one behind the other, simultaneously, existed on the south side of Delmar. At each end of the zone there was a sign upon which the words, "Bus Stop", or "Bus Zone", appeared. Immediately adjacent to the south curb on Delmar, extending the entire length of the bus zone, the area was paved with asphalt. While no testimony was given as to the width thereof, it is apparent from photographs in evidence that the asphalt strip or section was approximately 3 feet wide. Adjacent to the south edge of the asphalt was a concrete sidewalk approximately 5 feet wide, and south of the concrete walk was another asphalt strip approximately 2 feet in width. Thus immediately south of and adjacent to the south curb of Delmar, the sidewalk, paved with asphalt or concrete, was approximately 10 feet wide.

In the asphalt section adjacent to the south curb and near the west end thereof a light standard was located, the base thereof being about 2 feet square. Approximately 4 feet east of the east edge of the light standard there was located the top of a metal water cut-off box estimated to be 6 inches square. The top of the box protruded approximately three-fourths of an inch above the surface surrounding the area. It appears clearly from the photographs that while the major portion of the box occupied that portion of the sidewalk paved with asphalt immediately adjacent to the curb, a small portion thereof extended over the north edge of that portion of the sidewalk paved with concrete. In other words, the top of the box was approximately 3 feet south of the south curb line of Delmar Boulevard.

The Goodfellow bus stopped in the bus zone immediately to the rear of a Delmar bus also headed eastwardly, with about 2½ feet separating the front of the Good-

fellow bus and the rear of the Delmar bus. Plaintiff asked for and received a transfer which entitled him to transportation on the Delmar bus. In alighting from the bus plaintiff stepped upon the asphalt portion of the sidewalk at a point approximately 2 feet west of the light standard. With the intention of boarding the Delmar bus, plaintiff immediately proceeded eastwardly and after running a distance of about 8 feet tripped over the top of the water box and fell to the pavement. Plaintiff stated that the box was 2½ feet in front of the Goodfellow bus, and 25 feet (both distances being approximated) to the rear or west of the entrance to the Delmar bus.

There is no suggestion that the defendant violated the duty imposed upon it to exercise the highest degree of care in selecting a reasonably safe place for the discharge of plaintiff, or that plaintiff had not actually alighted and had not reached the sidewalk in safety. Beahan v. St. Louis Public Service Co., Mo.App., 213 S.W.2d 253, 255; Meyer v. St. Louis Public Service Co., 241 Mo.App. 1057, 253 S.W.2d 525–529; Gott v. Kansas City Rys. Co., Mo.Sup., 222 S.W. 827. Rather, plaintiff urges that because he received a transfer ticket which entitled him to continue his journey on the Delmar bus, and was in the process of making the transfer, his status as a passenger was not disrupted and he was entitled to the same care and protection afforded one physically present in a motor bus or street car. In support of this theory plaintiff relies upon Watts v. Fleming, 221 Mo.App. 1123, 298 S.W. 107; Austin v. St. Louis & S. F. R. Co., 149 Mo. App. 397, 130 S.W. 385; Fornoff v. Columbia Taxicab Co., 179 Mo.App. 620, 162 S.W. 699, 701. These authorities do announce the rule that the relationship of passenger and carrier is not necessarily terminated in every situation merely because the passenger has been discharged with safety. Therein the court concluded the facts justified application of the principle. An examination of these cases discloses a gross dissimilarity in the facts, so much so that they are not controlling. In one case only one route was available to passengers in making the transfer;[1] in another case the passenger was injured upon the premises of the carrier while responding to the invitation of the carrier's agent and servant;[2] in the other case the passenger took leave temporarily from the conveyance at the direction of the carrier's servant for the purpose of procuring the amount of fare, and while so doing was assaulted by the carrier's servant.[3]

There is good reason and also authority for holding that the status of passenger, even though transferring from one conveyance to another, is not sustained while the passenger, as here, is beyond and outside the control and direction of the carrier while walking upon a public way. In Anton v. St. Louis Public Service Co., 335 Mo. 188, 71 S.W.2d 702, the precise question was presented to, and decided by, our Supreme Court. Therein, and on somewhat analogous facts, after an exhaustive analysis of the cases, particularly Virginia Railway & Power Co. v. Dressler, 132 Va 342, 111 S.E. 243, 22 A.L.R. 301, this pronouncement appears, 71 S.W.2d loc. cit. 707: "While, as above stated, there appears to be some contrariety of judicial opinion as to the exact status of a person while making a transfer from one of the carrier's vehicles to another, we have been cited to no case holding that the carrier would be liable for the bad condition of a public street or sidewalk used in making the transfer, such condition not being due to the carrier's act or omission, so long as it

1. Watts v. Fleming, supra, wherein cars were stopped on either side of a viaduct over which tracks were being constructed. Passengers were required, in making transfer, to walk a distance of 500 to 600 feet over designated route from street car on one side of viaduct to street car on other side thereof.

2. Austin v. St. Louis & S. F. R. Co., supra.

3. Fornoff v. Columbia Taxicab Co., supra.

had furnished a reasonably safe place to alight from one vehicle and board the other and the passenger was free to and did choose his own course in going from one point to the other."

As pointed out in the Virginia case, supra, a transfer ticket imposes no liability on the carrier to make the transfer. The passenger must make the transfer and generally without direction or suggestion from the carrier. The transfer ticket is an undertaking and obligation on the part of the carrier to continue the carriage without additional charge if the passenger, in accordance with its terms, presents himself for carriage. In the instant case there was no showing that plaintiff was under any obligation to make the transfer from the Goodfellow bus to the Delmar bus by using the exact route chosen by him, or that the defendant undertook to control or direct the movement of plaintiff. He could have deviated from the course he pursued, indeed from aught that appears in the record plaintiff was under no compulsion to select the particular Delmar bus present in the bus zone for the purpose of continuing his journey.

From what has been said we hold that the relationship of passenger and carrier was not in existence at the time of the occurrence giving rise to this litigation.

In his brief plaintiff says that the law is in a "rather unsettled state as to whether or not the relationship of passenger and carrier existed between the parties at the time of plaintiff's injury". He contends, however, that if he was not occupying that status he was at least an invitee of defendant while upon the sidewalk, and being so, the court properly submitted to the jury the question of whether defendant was guilty of negligence in failing to exercise ordinary care to remedy the defective condition in the sidewalk, or in failing to warn plaintiff thereof.

Broadly stated, an invitee is one who enters upon the premises of another in response to an express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. 65 C.J.S., Negligence, § 43(1), p. 508; 38 Am.Jur., Negligence, § 96, p. 754; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045, 17 Ann.Cas. 576; Vol. 22 Missouri Digest, Negligence,

To sustain his theory plaintiff contends that the defendant had adopted and was using that part of the public sidewalk paved with asphalt lying between the south curb of Delmar and the portion of the sidewalk paved with concrete as a loading, unloading, and transfer zone for two of its buses. It cannot be disputed that for a distance extending approximately 60 feet along the south curb of Delmar Boulevard, there was an area designated and used as a bus zone. Therein buses stopped, and while there is no direct proof on the subject, the inference is reasonable that the sidewalk on the south side of Delmar for the distance of the zone was used by persons in making transfers. But the facts simply do not bear out plaintiff's contention that persons making a transfer were limited in their use of the sidewalk to that portion thereof approximately 3 feet wide south of and adjacent to the south curb of Delmar Boulevard. The photographs reveal that the asphalt section was as much a part of the entire sidewalk as the area paved with concrete, and subject to the same use by pedestrians including, of course, persons transferring from bus to bus. So the question is: Did the relationship of invitee and inviter as between plaintiff and defendant come into existence merely because plaintiff used the sidewalk adjacent to the bus zone under the circumstances herein noted? There are no other facts to support plaintiff's theory. The sidewalk was not upon property owned or occupied by defendant; the defendant did not construct, repair, maintain, or control the sidewalk or the water cut-off box, neither did the defendant control the movement of plaintiff or designate the precise route he was required to

take in making the transfer. We recognize that there have been situations where the relationship existed, even though the inviter was not the owner or occupant of the premises containing the agency which caused the injury, Meyer v. St. Louis Public Service Co., 241 Mo.App. 1057, 253 S.W. 2d 525, loc. cit. 529, 530. But we have been cited to no case, and independent research has revealed none, holding that the relationship existed under circumstances presented by the record herein.

 Furthermore, the law seems to be well settled in this jurisdiction that the city has the duty to maintain its sidewalks in reasonable repair. In Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, loc. cit. 40, our Supreme Court held that, "the city has the exclusive control of its sidewalks, and the owner or occupant of a building abutting a sidewalk is not liable, in the absence of statute, for injuries to a traveler through failure to maintain the sidewalk in repair if the owner or occupant did not cause the necessity for repair, nor from a defect in the walk he did not create, but he is liable where by his affirmative act he creates a dangerous condition, or creates or maintains a nuisance."

In support of his position plaintiff cites and relies upon Meyer v. St. Louis Public Service Co., supra; Brooks v. Union Depot Bridge & Terminal R. Co., 215 Mo.App. 643, 258 S.W. 724; and Anton v. St. Louis Public Service Co., supra. These cases have received our careful consideration. There is no factual analogy in the Meyer and Brooks cases, and in the Anton case the precise point here presented was not involved or passed upon. The law applicable to the instant case is clearly announced in 13 C.J.S., Carriers, § 714, p. 1332, as follows: "Where, as a regular incident of travel, a carrier operating on the public streets permits transfers to be made from conveyances on one route to conveyances on other routes, it is only bound to provide safe places for alighting and reëmbarking,

and *is not liable for the condition of the streets used by passengers in making the transfer.*" (Emphasis ours.) To hold otherwise would impose an unreasonable if not impossible burden upon the carrier.

The judgment is reversed.

ANDERSON, P. J., and SAM C. BLAIR, Special Judge, concur.